Thompson Federal Solutions v. AEP RSD Investors, Inc. Good morning, Your Honors. My name is Charles Ritter. I'm the attorney. I'm Duke Holzman on behalf of the appellants in this matter, originally the plaintiffs in the case before the district court. We're here today. I'm here today. Can you lift the microphone up so we can hear you? Sorry, Your Honor. I'm here today to ask this court to revisit and reverse the rulings of the district court below, both its initial summary judgment decision as well as its trial court decision. Before I start, I want to point out that while there is a trial record and a lengthy summary judgment record, most of this case resolves, gets resolved, based on an equity purchase agreement that included disclosures and financial statements that's found in the record at pages 702 through 793, along with a report from my client's expert, Kelly Besaw, which is in the record at 1213 through 1248. What did the district court do? In ruling on summary judgment, the court essentially gutted my client's entire case and its defenses. The district court dismissed, faced with competing summary judgment motions, the court denied all relief to my client and dismissed and granted most of the relief sought by the defendants, the appellees. In that ruling, the court concluded that my clients had failed to offer any evidence of damages related to gap violations, generally accepted counting principles violations. The district court also ruled that, as a matter of law, my client's theory for a breach of contract claim was invalid and had no legal support in case law. Finally, the district court's analysis, through the various causes of action, focused on my client's sophistication, their due diligence or lack of thereof, and concluded that there could be no finding of reasonable reliance or damages. Now, let me address what I think are the three big legal issues before this court. The first one concerns this breach of contract issue. My clients entered into an equity purchase agreement to buy the stock of a company called Zovio. When they bought that company, they negotiated for certain promises, certain warranties regarding the financial statements, the condition of the company. There were representations that there were no material undisclosed liabilities. There were representations that the attached financial statements were true and complete, fairly presented the financial condition of the company, and had been prepared in accordance with GAAP. They also provided a list of material contracts. And the contract defined what a material contract was. It was a one-time expense contract that exceeded $7,500, a contract that had annual expense of more than $5,000, or an annual receipt contract, an accounts receivable type arrangement, where the company was receiving more than $100,000 under a contract annually. Attached to the equity purchase agreement was a list of those contracts. The sellers disclosed no one-time cost contracts. The sellers disclosed under annual receipts contracts with an entity referred to as CBNI in the record. That's Chicago, Bridge, and Iron. As I understand the district court, and you can help me understand its analysis better, the theory, the flaw in your breach of contract claim was your client's failure to perform by failing to pay the earn-out consideration. And the analysis was essentially you can't allege breach of contract against another unless you've substantially performed and you didn't.  What is legal error in that analysis is that in this instance, my client bought the asset and assumed all the liabilities. And then they agreed that they would pay this contingent earn-out down the road. And after they purchased the asset, but before they made the contingent payment, the earn-out payment, they discovered these misrepresentations, these inaccuracies in the warranties, that the warranties weren't accurate. Under applicable law that we cited in our brief, a purchaser has a- Maybe, just making sure I'm understanding, but your client paid a dollar in consideration, and then so the true, its true payment would be the earn-out payments. And then in that, just bear with me just for a moment, and then in the period you say before the first earn-out is due, they discover, oh, facts are not as we expected them to be, but they weren't seeking rescission of the contract? No, they were not. And why not? Because they have a legal right, a legal remedy to assert a claim for breach, identify and provide the seller with notice of what that breach is, retain the asset, withhold the payment, and sue for their damages, and or the remedy is to sue that the breach is so substantial that they are relieved of their payment obligation. In our brief, we cited the Mississippi Shipbuilding case and the Steel Storage and Elevator case. Those were both New York Court of Appeals decisions from 1919 to 1923 that recognized that rule. We also cited the more recent cases from the first and second, excuse me, first and third department in Viacom and Fitzpatrick that applied that rule, which essentially, to restate it, if a purchaser buys something and they have a continuing payment obligation and they discover a breach, they have a right to notify the seller, we believe you're in breach, retain the asset, and sue for breach. In this case, the defendants argued that that was not the law, and the district court agreed with them that that was not the law, and our position is that that is clear legal error.  And in that regard, we think that that ruling needs to be reversed. That ruling also made the trial proceeding superfluous. Our entire complaint was dismissed. Entirely. That was the first legal issue that I wanted to get to, but I got diverted with my own thinking. The second issue that I wanted to touch on is a legal issue, and the mistake the district court made is that warranty provisions, their promises in the contract, they're enforceable as written, and the district court did not seem to accept or acknowledge this. The district court referenced the sophistication of my client. The district court referenced due diligence. The district court referenced that things were discovered after the fact. The fundamental question was in the equity purchase agreement, there were financial statements attached and schedules attached. Were the statements and representations in there inaccurate? Did they breach their promise? The answer is unequivocally yes. But under the applicable law, the court never should have gotten to, at least on summary judgment in dismissing my complaint, issues of reliance, and here's why. The laws we stated in our brief is that if a party to a contract purchases a promise, he should not be denied damages for breach on the grounds it was unwise or unreasonable for him to do so. Indeed, Judge Hand admonishes to argue that a promisee is responsible for failing to independently confirm a warranty is utterly to misconceive his office. That was from the anger decision, a southern district decision from 1979 cited in our brief that this court affirmed. That same rule was carried forward in this court's galley decision from 1992, which applied the New York Court of Appeals decision in the CVS case from 1990. Our point there is we were entitled to sue for breach based on material inaccuracies in the representations made in the equity purchase agreement. Finally, Your Honor, I did want to touch on another important fact. The district court stated in its trial decision that the expert report of Kelly Besaw was never an exhibit in the summary judgment record. That is just literally incorrect. It's in the record at pages 1213 through 1248. Mr. Besaw analyzes the factual basis for the three primary misrepresentations. The CBI revenue claim, the CBI liability claim, and the fixed asset claim. My time is up. My time is up. Thank you. May it please the court, Brian Whelan for appellees. I would like to spend my time focusing on some of the contentions made during counsel's argument. First, let's focus on what the contract says about potential set off of the earn out. 8.10, the only way in which the CAPEX had the right to stop paying the earn out would be if there was a final determination that they were entitled to indemnification for any claimed losses. So that, and they don't want to, they just talk about in their papers about a general set off right. But in reality, there was only a set off if there was a final determination, which of course the only final determination by the district court was they had no affirmative claims. And there was a $300,000 limitation, which the court found to be enforceable under these facts. So why didn't they pay the other 700 plus thousand dollars? Even if this set off final determination language wasn't there. We don't need to look at cases about ships. We need to look at the contract, which should be enforced. I'd like to answer at least what my thought is about Your Honor's question about why they didn't pursue a rescission. Because they were making millions of dollars, and my client has a dollar. They were, six days before they commenced this case, under a verified complaint claiming they wanted a rescission, their principal valued the company in an internal document at $27 to $60 million. They know that if there was a rescission, they'd have to pay back the millions and millions they were making. I would respectfully submit that's the true fraud here, that they commenced this case under a claim of rescission. And they purported eight misrepresentations. Four they abandoned on summary judgment, and three that are subject of this appeal. And I'll just briefly, because counsel just talked generally about warranties. You would have to find on multiple grounds that the court got it wrong on these issues. Multiple elements weren't established on both liability and damages. In short, two of the three claims relate to a contract that Zovey had with Chicago Bridge and Iron. They got the contract. They saw the terms. They could have read them. They could have called CB&I and asked them, are you going to renew the contract? Are there HP costs here? What's the revenue allocation? As the court found, even if these oral representations were made, to suggest that oral representations should overcome the terms of a contract. And of course, we also note that future events are not granted. The idea of just renewing a contract, a future event is not actionable under New York law. And then we have the damages issue, where they just don't have any out-of-pocket costs, which has to be shown by clear and convincing evidence, as this court has found, and has been the seminal rule for over 100 years in New York. In the CB&I contract, it had a fixed term that Zovey was contracted to provide user licenses, as CB&I may request, during a one-year period? It was a one-year contract by its terms, Your Honor. It was one year. And so even if to the extent Mr. Grossman, the then CEO, said, and what he said in his deposition is, I believe they're going to renew. That was his testimony. But even if they said that, I mean, that's not the basis for a misrepresentation under New York law. And then the trial proceeding was superfluous. They had the ability, the court gave them the opportunity to take this CB&I liability issue and get an entire, potentially, an entire evisceration of the urinal. We show up at trial. What's the first thing you should do? Establish the costs. Put on evidence of, we made these payments. We wrote these checks to HP. Or even someone putting their hand up and testifying this was the amount. You won't find any of that. It never happened. We got numbers. I heard 500,000. I heard 700,000. I heard 1.6 million. I heard a lot of different numbers. But it never materialized. But throughout their papers and argument, if only the court heard from Kelly Besaw, the expert, if only the judge focused on that. They didn't call him to testify at this trial. And he offered a damages opinion on this very issue. That's not, of course, the lower court's fault. He was a damages expert only. I'm surprised they're talking about GATT principles. He offered, you can look at the report, nothing about GATT and nothing that these financial statements. He offered no opinion whatsoever other than on damages, but certainly not one that there was any GATT violation. And I know there's this reference to a footnote as to, yes, the Besaw report was in the summary judgment record. I did read that footnote a couple times that counsel's referring to. I don't read it to mean that the court believed that the Besaw report was not in the summary judgment record. I think what she was saying was the underlying backup for the CB&I liability issue. Again, the checks, the invoices were not there. So other than that, Your Honor, I will rest on my papers unless there's any questions. What's your position on the defamation issue? Is it your view that it's been abandoned? I'll ask opposing counsel when he gets up, but what's your view? My view is the court correctly determined that during this litigation when Mr. Ragusa targeted my client's business contacts and said personally liable for fraud. And that came shortly after just simply a decision on a motion to dismiss saying that the claim could continue. That that was a reasonable person reading that could say, oh, they've been adjudicated for fraud. They had to deal with the repercussions of that. You know, we would have loved to have seen some more damages on that. That's not the base. Of course, we haven't appealed that point, but we think that all decisions including that one should be affirmed. Unless there's anything else, thank you for the time. Your Honor, I'll pick up with your question. I'll try to be quick. With regard to the defamation claim, it should never have been, there never should have been a word in favor of Mr. Williams' clients. Substantial truth is a defense. In this case, there was substantial truth behind that. The fact of the matter is that there were issues in the equity purchase agreement schedules and financial statements which contained misrepresentations. You didn't raise it in your reply brief, right, the defamation question? We addressed it in our primary brief, Your Honor. We addressed it in our primary brief. Just real quickly. So in your view, there was no abandonment of this issue? There was no abandonment. We addressed it in our main brief. Your Honors, to sum up, Mr. Besaw's report was disregarded by the district court, never mentioned in the summary judgment decision. The documents that are the contract have misrepresentations in them. We detailed those in our brief. Thank you. Thank you both, and we'll take the matter under advisement.